1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MARK ANCHOR ALBERT & ASSOCIATES
MARK ANCHOR ALBERT, State Bar No. 137027
  *albert@lalitigators.com*
JASON T. RIDDICK, State Bar No. 235980
  *riddick@lalitigators.com*
800 W. 6th Street, Suite 1220
Los Angeles, California 90017
Telephone: (213) 699-1355
Facsimile: (213) 699-1354

Attorneys for Plaintiff
JEFFREY S. KOENIG

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JEFFREY S. KOENIG, an individual,<br><br>Plaintiff,<br><br>v.<br><br>GAVIN CHRISTOPHER NEWSOM, in his official capacity as Governor of the State of California; and ALEX PADILLA, in his official capacity as the Secretary of State of the State of California,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF RE: THE CONSTITUTIONALITY OF THE PRESIDENTIAL TAX TRANSPARENCY AND ACCOUNTABILITY ACT**<br><br>[VIOLATIONS OF THE 1ST AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION UNDER 28 U.S.C. § 1983] |

MARK ANCHOR ALBERT & ASSOC.
BUSINESS LITIGATION LAWYERS

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ...................................................................................... 1

II.    JURISDICTION AND VENUE ................................................................. 3

III.   PARTIES ................................................................................................... 3

IV.    ARTICLE III STANDING ........................................................................ 4

V.     THE KEY CONSTITUTIONAL PROVISIONS AT ISSUE ..................... 5

    A.    The First Amendment .................................................................... 5

    B.    The Fourteenth Amendment .......................................................... 5

    C.    The Presidential Qualifications Clause ......................................... 6

    D.    The Presidential Elections Clause ................................................. 6

VI.    THE POLITICAL AND LEGISLATIVE BACKGROUND ....................... 6

    A.    Concise History of the Disclosure of Presidential Tax Returns ............ 6

    B.    Concise History Of The Genesis of The California Trump Ballot Act .................................................................................................. 7

    C.    The Provisions Of The Trump Ballot Act ................................... 10

        1.    The Act Requires Production Of Presidential Primary Candidates' Tax Returns In Order To Obtain Ballot Access ...... 10

        2.    The Act Supposedly Is Predicated On A Compelling State Need For Primary Voters To Obtain Presidential Candidate Tax Information .......................................................... 11

VII.   CONCISE SUMMARY OF THE REASONS WHY THE TRUMP BALLOT ACT IS UNCONSTITUTIONAL ................................................ 12

VIII.  CLAIM FOR RELIEF (FOR A DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF FOR VIOLATION OF PLAINTIFF'S FIRST AND FOURTEENTH AMENDMENT RIGHTS UNDER 42 U.S.C. § 1983) .................................................................................................... 17

IX.    PRAYER .................................................................................................. 18

MARK ANCHOR ALBERT & ASSOC.
BUSINESS LITIGATION LAWYERS

# I.    INTRODUCTION

1.    No right is more precious in our constitutional republic than the right to vote for the most powerful person in the nation, and perhaps the world:  the President of the United States.  A citizen's constitutional voting and associational rights, which are the bedrock of our representative democracy, include the right to cast a meaningful vote at all stages of the electoral process – including state presidential primary elections.  These fundamental voting and associational rights are all the more important in the context of a presidential primary, since only the President and Vice-President of the United States are elected nationwide. The state-by-state election of the United States President impacts a uniquely-important <u>national</u> interest because votes for that national office are interrelated with votes for the office by voters in other states around the county.  A state presidential primary election campaign is an essential platform for the expression of views on contested national policy issues of the day.  A presidential primary candidate serves as a rallying-point for like-minded citizens to associate together for their joint expression of their political views.  Accordingly, a state ballot access law that imposes eligibility requirements upon  a presidential candidate for a state primary election implicates fundemantal constitutional rights of primary voters.

2.    In violation of these fundamental rights – to vote and to associate with other voters and their supporters – effective July 30, 2019, the Democratic Party supermajority in the California state Legislature and Executive Branch abused their power by implementing SB 27, the so-called *Presidential Tax Transparency and Accountability Act*, which adds Section 6880 *et seq.* to the California Elections Code (the "Trump Ballot Act").  The Trump Ballot Act purports to require President Donald Trump to turn over his tax returns from the last five years for public disclosure, or be delisted from Republican Party primary ballots in advance of the 2020 presidential election.

3.      The Democratic-dominated California state Government attempts to mask its invidious partisan purpose via pretextual reasons, couching its anti-Trump and anti-Republican primary ballot legislation as requiring "voter information" supposedly essential in the public interest, regardless of political affiliation.

4.      But the Trump Ballot Act is not an "even handed," "neutral," or "unbiased" statutory vehicle to obtain important information voters might need to assess presidential candidates in pre-election primaries.  The superficial appearance of uniform application to primary candidates from all eligible political parties is a ruse.  By imposing an unconstitutional condition impacting the primary ballot access of the incumbent President of the United States, the Trump Ballot Act's true intent and purpose is to suppress the vote of Trump supporters in California, up and down the line, effectively disenfranchising them in the 2020 presidential primary election.

5.      That naked abuse of political power, to suppress minority-party voting rights, should concern not only Republicans, but also Democrats, Green Party members, progressives, libertarians, Independents, and liberals.  The right of ordinary citizens to vote and associate with their fellow citizens under the First and Fourteenth Amendments to the United States Constitution cannot be abridged by whichever party happens to control the states's legislature and executive branches, in order to manipulate the minority party's primary election process and outcome.

6.      In addition, the Trump Ballot Act contains an "urgency" clause and enacts Elections Code § 6883, which requires President Trump to produce his tax returns not later than 98 days before the March 3, 2020 primary.  That date is fast approaching: November 26, 2019. (*See* http://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201920200SB27).

7.      Consequently, the "urgent" Trump Ballot Act, in conjunction with the California Legislature's recent enactment of SB 568 (the "Prime Time Primary Act," Cal. Elections Code §§ 316 *et seq.*), which advanced California's presidential primary election date three months, to super-Tuesday, March 20, 2020, imposes

MARK ANCHOR ALBERT & ASSOC.
BUSINESS LITIGATION LAWYERS

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    unreasonably exigent timing pressures on voters whose constitutional rights are
2    violated to seek to overturn the partisan Trump Ballot Act.

3        8.      Remedying this unconstitutonal and undue burden imposed on the
4    minority party's  primary operations and primary voting rights is the purpose of this
5    lawsuit.

6        9.      As elaborated below, the Court should enjoin the California Secretary of
7    State and the State of California from implementing the Trump Ballot Act, and enter
8    a declaratory judgment that it is unconstitutional.   The Trump Ballot Act imposes an
9    undue burden on the voting and associational rights of Republican primary voters
10   (approximately 25% of California registered voters) in relation to the supposedly
11   "neutral" state interests it advances.  Plaintiff should be awarded his reasonable
12   attorneys' fees under 28 U.S.C. § 1983.

13   **II.     JURISDICTION AND VENUE**

14       10.      This case arises under the United States Constitution and the laws of the
15   United States and the State of California.  This case presents federal questions within
16   this Court's jurisdiction under Article III, Section 2 of the United States Constitution,
17   the Presidential Elections Clause and the Presidential Qualifications Clause of
18   Article II, Section 1 of the Constitution, as well as Plaintiffs' voting and associational
19   rights, and due process rights, under the First and Fourteenth Amendments to the
20   Constitution.  This Court also has subject matter jurisdiction over this action pursuant
21   to 28 U.S.C. §§ 1331 and 1343.  This Court has jurisdiction to grant declaratory and
22   injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

23       11.      Venue is proper in the Eastern District of California under 28 U.S.C. §
24   1391(b)(1) and (2) because Defendants maintain their official offices, exercise their
25   authority in their official capacities, and will enforce the Act in and from this
26   District; and it is the District in which substantially all of the events giving rise to the
27   claims occurred, including passage of the Act by the California Legislature and
28   signature by Governor Newsom.

III.  **PARTIES**

12.     Plaintiff Jeffrey S. Koenig is a resident of the City and County of Los Angeles,  within the Western Division of this District, and he is a citizen of the State of California, a taxpayer, a voter, and a registered Republican.

13.     Defendant Gavin Christopher Newsom ("Governor Newsom"), in his official capacity as the Governor of the State of California, is charged with the execution of California law, including but not limited to its election laws.

14.     Defendant Alex Padilla ("Secretary Padilla"), in his official capacity as the Secretary of State of California, is the supervisor and director of all election matters in California.  Secretary Padilla has duties to oversee the election laws of California so as to ensure compliance with the United States Constitution and applicable law.

IV.  **ARTICLE III STANDING**

15.     As a California resident and Republican primary voter, Mr. Koenig has standing to challenge the constitutionality of the Trump Ballot Act because the impact of candidate eligibility requirements on him (and other voters) implicates basic constitutional rights.  Mr. Koenig' right, as a citizen, to vote free from arbitrary impairment by state action is judicially recognized as a constitutional right under the First and Fourteenth Amendments.  Ballot access restrictions, like those imposed by the Trump Ballot Act, impact the constitutionally-protected expressive and associational interests of Mr. Koenig and other like-minded voters who choose to associate together to express their support for a particular Presidential primary candidate – here, the incumbent President of the United States – because of the views he espouses and public policies he promotes.

16.     Mr. Koenig and other California voters have a right to choose among candidates placed on their political party's primary ballot without unconstitutional exclusions or restrictions imposed by the dominant opposing party which controls the levers of government power.  Accordingly, Mr. Koenig (and each other similarly

situated voter) suffers an Article III injury in fact when a Presidential candidate whom he supports is prevented from appearing on a ballot due to a pretextual ballot access condition based on thinly-disguised, invidious, and partisan motives.

## V.      THE KEY CONSTITUTIONAL PROVISIONS AT ISSUE

### A.      The First Amendment

17.      The First Amendment to the United States Constitution provides as follows:

> "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

(U.S. Const., Amend. 1.)

### B.      The Fourteenth Amendment

18.      The Fourteenth Amendment to the United States Constitution, often referred to as the "Due Process Clause," provides in pertinent part as follows:

> Sec. 1. [Citizens of the United States.] All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
>
> *      *      *
>
> Sec. 5. [Power to enforce amendment.] The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article.

(U.S. Const., Amend. 14, §§ 1 & 5.)

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

C.     **The Presidential Qualifications Clause**

19.     The Framers of the United States Constitution endeavored to make sure that only loyal, mature persons could be elected President of the United States.  To ensure this, they mandated in Article II, Section1, clause 5 of our Constitution three – and only three – requirements for the Presidency, focusing on a candidate's age, residency, and citizenship (the "Presidential Qualifications Clause"):

> "No Person except a natural born Citizen, or a Citizen of the United States, at the time of the Adoption of this Constitution, shall be eligible to the Office of President; neither shall any Person be eligible to that Office who shall not have attained to the Age of thirty five Years, and been fourteen Years a Resident within the United States."

(U.S. Const., art. II, § 1, cl. 5.)

D.     **The Presidential Elections Clause**

20.     The U.S. Constitution does not allow for the direct, popular vote by the people of the respective states for candidates for President of the United States. Instead, the Constitution establishes a mechanism for the election of a candidate for President from each respective state through the appointment of "electors" to the Electoral College (the "Presidential Elections Clause"):

> [t]he executive Power shall be vested in a President of the United States of America. He [sic] shall… be elected, as follows… Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress…"

(U.S. Const., art. II, § 1, para. 1-2.)

VI.    **THE POLITICAL AND LEGISLATIVE BACKGROUND**

A.     **Concise History of the Disclosure of Presidential Tax Returns**

21.     There is no doubt that President Trump has proven to be a controversial President.  Concurrent with the Russian-collusion investigations, Democratic

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   representatives at the state and national levels have also launched numerous

2   investigations and lawsuits seeking to force President Trump to turn over his federal

3   tax returns.  There is no federal statute expressly requiring that Presidential

4   candidates disclose their tax returns to gain access to the ballot, whether in state or

5   federal elections.  Congress has had ample opportunity to consider passage of such a

6   requirement, and has declined to do so.

7         22.    Instead, most Presidents since 1973, when President Richard Nixon was

8   in office, have <u>voluntarily</u> turned over their tax returns.  Notably, in 1976, President

9   Gerald Ford did not do so, opting instead to release a summary of his tax return.

10  Then, during the 2016 presidential campaign, Donald Trump departed from this

11  purely voluntary practice, declining to release his tax returns.  He presently is

12  fighting multiple lawsuits in several federal courts to prevent his tax returns from

13  being turned over and made public, under 26 U.S.C. § 6103(f) and otherwise.  Mr.

14  Trump, like all American citizens, retains the right of privacy with respect to his tax

15  returns, and there is no federal statute depriving him of that right.   He complies, as

16  must all Presidential candidates, with federal election financial disclosure laws.

17      **B.**      **Concise History Of The Genesis of The California Trump Ballot Act**

18        23.    A virtually identical version of the Trump Ballot Act – SB 149 – was

19  vetoed by former California Governor Jerry Brown, who stated as follows:

20      "To the Members of the California State Senate:

21          I am returning Senate Act 149 without my signature.

22          This bill requires any candidate for president to disclose five

23  years of his or her income tax returns before their name can be placed

24  on California's primary election ballot.

25          Although tax returns are by law confidential, many presidential

26  candidates have voluntarily released them. This bill is a response to

27  President Trump's refusal to release his returns during the last election.

28          While I recognize the political attractiveness-even the merits-of

7

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   getting President Trump's tax returns, I worry about the political perils

2   of individual states seeking to regulate presidential elections in this

3   manner. First, it may not be constitutional. Second, it sets a "slippery

4   slope" precedent. Today we require tax returns, but what would be next?

5   Five years of health records? A certified birth certificate? High school

6   report cards? And will these requirements vary depending on which

7   political party is in power?

8        A qualified candidate's ability to appear on the ballot is

9   fundamental to our democratic system. For that reason, I hesitate to start

10   down a road that well might lead to an ever escalating set of differing

11   state requirements for presidential candidates.

12        Sincerely,

13        Edmund G. Brown Jr."

14   (http://leginfo.legislature.ca.gov/faces/billStatusClient.xhtml?bill_id=201720180SB1

15   49.)

16       24.    Indeed, Defendant State of California's own Office of the Legislative

17   Counsel concluded that SB 149 (the predececessor version of SB 27) would be

18   unconstitutional if enacted.  (Ops. Cal. Legis. Counsel, No. 1718407 (Sept. 7, 2017)

19   Presidential Qualifications: Tax Return Disclosure.)   That legal opinion has since

20   "become unavailable" and is unavailable either on the Legislative Counsel's website

21   or the California Legislature's bill status page, despite the State of California's

22   general practice of preserving public records and providing access to such records

23   online.

24       25.    Both SB 27 and its vetoed predecessor bill, SB 148, admit that their

25   primary purpose and intent is to target President Trump individually and force him to

26   publicly disclose his tax returns:

27        Stated need for the bill

28        According to the author:

MARK ANCHOR ALBERT & ASSOC.
BUSINESS LITIGATION LAWYERS



1    Throughout his campaign, President Donald Trump refused

2    to release his tax returns even as his Republican,

3    Democratic and third-party opponents did so.

4

5    Releasing tax returns to the public is a long held tradition

6    by all major party Presidential candidates in the modern

7    era. This practice assured the public that all potential

8    Presidential candidates were complying with the

9    emoluments clause.

10

11    The American public deserves to know that the individual

12    they are selecting to be president will have their best

13    interest at the heart of every decision, not the best interests

14    of any business venture or investment fund. Transparency

15    is a non-partisan issue.

16

17    There are pressing questions for voters to have answered

18    before an election, because unlike members of Congress

19    and federal appointees, presidents are largely exempt from

20    conflict-of-interest

21    laws.

22

23    Voters not only deserve full disclosure  of their future

24    leader's tax

25    returns, they should be entitled to them.

26  (*See* file:///C:/Users/ma/Downloads/201720180SB149_Senate%20Judiciary_.pdf

27        26.    The comments at page 5 of the bill analysis of SB 27 dated March 15,

28  2019 by  Senate Elections And Constitutional Amendments Committee contains the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   identical statement by the SB 27's author.   (*See*

2   https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201920200S

3   B27.)

4       **C.**    **The Provisions Of The Trump Ballot Act**

5           **1.**    **The Act Requires Production Of Presidential Primary**

6               **Candidates' Tax Returns In Order To Obtain Ballot Access**

7       27.    The Trump Ballot Act amends certain provisions of the California

8   Elections Code governing the criteria and conditions by which candidates' names

9   appear on the presidential primary ballot.  Pursuant to the Act, Presidential

10   candidates would have to submit copies of their federal income tax returns for the

11   five most recent taxable years to the California Secretary of State's Office in addition

12   to meeting all other ballot access requirements.  The Act provides that the Secretary

13   of State shall not print the name of a candidate for President of the United States on a

14   primary election ballot unless the candidate, within a reasonable time frame

15   established by the Secretary of State, files with the Secretary of State  a copy of

16   every income tax return the candidate filed with the Internal Revenue Service (IRS)

17   in the five most recent taxable years. After redacting the returns for privacy purposes,

18   the Secretary of State would make the returns available to the public through its

19   website.  Presidential primary candidates could refuse to submit their tax returns, but

20   would then have to proceed only on a write-in basis – they would be excluded from

21   the printed ballot and thus effectively precluded from prevailing in the primary.

22       28.    The Act defines "income tax return" as any tax or information return,

23   declaration of estimated tax, or claim for refund required by, or provided for or

24   permitted under, the provisions of the Internal Revenue Code, and that is filed on

25   behalf of, or with respect to any person, and any amendment or supplement thereto,

26   including supporting schedules, attachments, or lists that are supplemental to, or part

27   of, the filed return.

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

29.     If the candidate has not filed an income tax return with the IRS for the tax year immediately preceding the primary election, the candidate shall submit a copy of the income tax return to the Secretary of State within five days of filing the return with the IRS.   The tax return production requirement does not apply to any year in which the presidential primary candidate was not required to file an income tax return with the IRS.

30.     Finally, the Act requires the Secretary of State to adopt implementing regulations, and contains an "urgency clause."

(*See* http://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201920200SB27)

**2.      The Act Supposedly Is Predicated On A Compelling State Need For Primary Voters To Obtain Presidential Candidate Tax Information**

31.     In enacting the Trump Ballot Action, the bill states, in pertinent part, that the Legislature finds and declares all of the following:

a)      The State of California has a strong interest in ensuring that its voters make informed, educated choices in the voting booth, and to this end, the state has mandated that extensive amounts of information be provided to voters, including county and state voter information guides;

b)      A presidential candidate's income tax returns provide voters with essential information regarding the candidate's potential conflicts of interest, business dealings, financial status, and charitable donations; therefore, the information in tax returns helps voters to make a more informed decision;

c)      As one of the largest centers of economic activity in the world, the State of California has a special interest in the President refraining from corrupt or  self-enriching behaviors while in office and the people of California can better estimate the risks of any given Presidential candidate

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

MARK ANCHOR ALBERT & ASSOC.
BUSINESS LITIGATION LAWYERS

engaging in corruption or the appearance of corruption if they have access to candidates' tax returns;

d)     The State of California has an interest in ensuring that any violations of the Foreign Emoluments Clause of the U. S. Constitution or statutory prohibitions on behavior such as insider trading are detected and punished and mandated disclosure of Presidential candidates' tax returns will enable enforcement of the laws against whichever candidate is elected President; and

e) compliance costs with this requirement will be trivial.

## VII.   CONCISE SUMMARY OF THE REASONS WHY THE TRUMP BALLOT ACT IS UNCONSTITUTIONAL

32.     As stated at the outset, the right to vote is a uniquely precious constituional right.  *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 670 (1966). It is "protective of all fundamental rights and privileges."  *Evans v. Cornman*, 398 U.S. 419, 422 (1970).  Free speech rights, especially during a political campaign, are also fundamental rights.  *See, e.g., Gitlow v. New York*, 268 U.S. 652, 666 (1925); *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979) ("Restrictions on access to the ballot burden two distinct and fundamental rights, the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively") (internal quotation marks omitted); *see also Citizens United v. Fed. Elec. Comm'n*, 558 U.S. 310 at 339 (2010) ("The First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office") (internal citations and quotation marks omitted); *Ariz. Libertarian Party v. Reagan*, 798 F.3d 723, 728-29 (9th Cir. 2015).

33.     By this federal § 1983 constitutional lawsuit, a California voter and taxpayer, and registered Republican (Mr. Koenig), challenges the constitutionality of the Trump Ballot Act on the ground that its tax return production requirement

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

MARK ANCHOR ALBERT & ASSOC.
BUSINESS LITIGATION LAWYERS

1  constitutes an impermissible state-imposed condition for the eligibility of
2  Presidential candidates in violation of the Qualifications Clause of the United States
3  Constitution (art. I, § 2, cl. 2), which on its face provides only three such conditions
4  (age of 35, natural-born citizen, 14 years continuous residency in the United States).
5  Additionally, the Trump Ballot Act impermissibly interferes with the minority party's
6  Presidential primary election and process, and also unreasonably restricts Mr.
7  Koenig' right to vote and to associate with other like-minded voters in Republican
8  presidential primaries, in violation of the First and Fourteenth Amendments to the
9  United States Constitution, and his rights under 28 U.S.C. § 1983.

10      34.    Assuming, *arguendo*, that the <u>Anderson/Burdick</u> balancing test applies
11  to the primary ballot access conditions imposed by the Trump Ballot Act (<u>Anderson</u>
12  <u>v. Celebrezze</u>, 460 U.S. 780 (1983), and <u>Burdickv. Takushi</u>, 504 U.S. 428 (1992),
13  Plaintiff alleges that the magnitude of the burden imposed on Republican primary
14  voters (and non-Republican voters who may wish to register as Republicans)
15  substantially outweighs California's purported justifications for the law,  moving the
16  needle towards a strict scrutiny evaluation of the Trump Ballot Act and its
17  invalidation on constitutional grounds.

18      35.    The Trump Ballot Act does not impose only "reasonable,
19  nondiscriminatory restrictions" upon the First and Fourteenth Amendment Rights of
20  voters.  Instead, unless President Trump turns over his tax returns for the last five
21  years in the next four months (by November 26, 2019), nearly five million California
22  citizens and voters who are registered with the Republican Party will be effectively
23  disenfranchised from voting in the presidential primary for the incumbent President
24  of  the  United States.  According to official voter registration statistics published by
25  Secretary Padilla, as of February 10, 2019 (the most recent reporting date) there were
26  8,612,368 registered Democratic voters in California (43.1%) and 4,709,851
27  registered Republican voters (23.6%).  (*See* https://elections.cdn.sos.ca.gov/ror/ror-
28  odd-year-2019/historical-reg-stats.pdf.)

MARK ANCHOR ALBERT & ASSOC.
BUSINESS LITIGATION LAWYERS

36.     The purported informational benefits that supposedly would accrue to voters  from the production of tax returns from presidential candidates, as opposed to the information already available from other sources, including the candidates' federal election financial disclosures, pales in comparison to the profound harm that would be suffered by nearly 5 million Republican voters whose preferred presidential candidate – the incumbent President of the United States –  would be excluded from their own party's primary Presidential electon ballot.  This out-of-skew imbalance of "harms and benefits" is underscored by the fact that voters who are concerned about the failure of President Trump, or any other Presidential candidate, to disclose their tax returns. have a simple and effective remedy:  DON'T VOTE FOR HIM OR HER.

37.     President Trump has made abundantly clear he will not voluntarily disclose his confidential tax returns to the public.  So the purported state interest in obtaining his tax return information (to detect conflicts of interests, or violations of the Emoluments Clause, etc.) is a red herring.  Its true goal is not to gather additional presidential candidate tax return information, but rather to harm the President and his 2020 reelection prospects, and to punish him and his supporters in California by in effect canceling their presidential primary.  In this way, the Trump Ballot Act impermissibly interferes with the ability of Mr. Koenig and other Republican primary voters to promote the Presidential nominee of their choice by hampering Republican party decision-making in their own Presidential primary.

38.     Additionally, Plaintiff alleges that the Qualifications Clause of the United States Constitution imposes only three requirements for presidential candidates:  (1) he or she must be a natural born Citizen, (2) he or she must be at least 35 years old, and (3) he or she must have resided in the United Stated for at least fourteen years.  Where does that leave room for individual state legislatures to impose a fourth requirement?  Or a fifth?  The State of California has no lawful authority to impose additional qualifications on a candidate for the office of President of the United States beyond those qualifications set forth in the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   Qualifications Clause (U.S. Const., art. II, § 1, para. 5).

2       39.    Defendants contend that the tax return production requirement for

3   primary ballot access by Presidential candidates is a reasonable procedural regulation

4   of the electoral process permitted under the Presidential Elections Clause (U.S.

5   Const., art. II, § 1, para. 1-2) and applicable law.   However, this ballot access law, if

6   allowed to stand, would open the floodgates for California and 49 other states to

7   impose additional "informational" primary ballet access restrictions that would

8   impact the national electoral process, beyond their individual states.  If the reasoning

9   and purported justification by the California Legislature were correct and sufficient,

10  then by the same reasoning California or any of the 49 other states could prohibit

11  primary ballot access to Presidential candidates unless they produced their

12  confidential medical records, psychiatric and therapist records, academic records,

13  criminal records, family law records, or driving records.  The conceivable list of

14  "relevant" or "critical" information as a justification for denial of ballet access would

15  have no limit, and state legislatures throughout the country would be able to impose

16  limits on Presidential candidates based on naked political considerations as

17  California has done in passing the Trump Ballot Act.

18      40.    Allowing individual states to adopt their own qualifications for

19  Presidential primary candidates for inclusion on Presidential primary ballots is

20  inconsistent with the Framers' requirements for uniform standards for the

21  qualifications of Presidential candidates, under the Presidential Qualifications Clause

22  of the United States Constitution.  If the qualifications set forth in the text of the

23  Constitution are to be changed, that text must be amended; it cannot be done under

24  the guise of reasonable procedural requirements for state elections under the

25  Presidential Elections Clause  (U.S. Const., art. II, § 1, para. 1-2).

26      41.    The Trump Ballot Act is a state-imposed ballot access restriction that

27  unconstitutionally promotes the twin goals of disadvantaging a particular class of

28  candidates and voters – the minority party of Republicans in California – while

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   evading the dictates of the Qualifications Clause.  The Trump Ballot Act is not an

2   even-handed and fair law designed to increase voter information.  The "applies to all"

3   justification is wholly pretextual.  The Trump Ballot Act has been imposed by the

4   super-majority, Democrat-dominated Legislature and the "progressive " Democratic

5   Governor, Gavin Newsom, in order to target and harm President Trump and his

6   supporters in California.  (The prior governor, Jerry Brown, recognized the  flaws in

7   a substantively identical 2017 law passed by the legislature, and vetoed it.)  These

8   government actors have specifically targeted this statute to disadvantage President

9   Donald Trump and his millions of supporters in this State, in order to suppress

10   Republican and conservative voter interest and intensity by eliminating President

11   Trump from the primary election process, and thereby stifle voter enthusiasm for

12   Republican candidates down-ballot for other state and local offices.

13       42.    This case is about hyper-partisan government abuse of power in order to

14   discourage the minority, opposing party's members and other conservative and

15   independent supporters of the President, not just in the 2020 Presidential primary

16   election, but in state and local elections also.  If President Trump is excluded from

17   the primary ballot, voters will be discouraged from participating in the primary

18   election process at all, and likely from voting for candidates down-ballot.

19       43.    California – effectively a one-party state – should not be permitted to

20   impose conditions on Presidential primary contests that may impact other states'

21   primary election procedures and outcomes.  It is all too easy for the supermajority

22   party to impose unreasonable conditions on the other party's primary elections under

23   the pretext that the conditions apply evenly to all political parties.  The Trump Ballot

24   Act seeks to dictate the electoral outcome of the 2020 Presidential primary election,

25   to favor Democrats and disfavor Republicans, and to evade important constitutional

26   restraints under the Qualifications Clause and First and Fourteenth Amendments to

27   the United States Constitution.  It should be declared unconstitutional forthwith,

28   before almost 5 million Republican voters are irreparably harmed.

MARK ANCHOR ALBERT & ASSOC.
BUSINESS LITIGATION LAWYERS

## VIII.  CLAIM FOR RELIEF (FOR A DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF FOR VIOLATION OF PLAINTIFF'S FIRST AND FOURTEENTH AMENDMENT RIGHTS UNDER 42 U.S.C. § 1983)

44.     Plaintiff restates and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

45.     Plaintiff seeks a declaration by this Court under 28 U.S.C. §§ 2201 and 2202 that the Trump Ballot Act is unconstitutional under the First and Fourteenth Amendments to the United States Constitution.  An actual controversy exists in that Plaintiff contends, and Defendants State of California and Secretary Padilla dispute, that the Trump Ballot Act violates the Presidential Elections Clause (U.S. Const., art. II, § I, para. 1-2) and the Presidential Qualifications Clause (U.S. Const., art. II, § 1, para. 5) by imposing an unconstitutional condition for inclusion on Presidential primary ballots in the State of California.

46.     In so doing, Plaintiff contends, and Defendants dispute, that the Act imposes an undue burden on the voting and associational rights of California citizens who wish to vote for the presidential candidate put forth by their chosen political party, wholly out of proportion to whatever benefits would be derived from increased tax information disclosure by presidential primary candidates; and, further, that the supposedly even-handed application of the tax return disclosure requirement is a pretext designed to mask the invidious partisan goal to suppress Republican voter enthusiasm and turnout in the 2020 Presidential primary election, to intefere with and undermine the primary electoral process, to dampen voter turnout in California and other states, and to depress voters participation in "down-ballot" state and local political contests.

47.     Preliminary and permanent injunctive relief, barring the implementation of the Trump Ballot Act (Cal. Elections Code §§ 6880 *et seq.*), is particularly warranted given the exigent timing requirements the Act imposes, in conjunction

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   with the Prime Time Primary Act (Cal. Elections Code §§ 316 *et seq.*).  Elections

2   Code § 6883 requires presidential candidates to produce the prior 5 years' of their tax

3   returns not later than 98 days before the March 3, 2020 primary; *i.e.*, not later than

4   November 26, 2019.  That is less than four months after the Trump Ballot Act was

5   signed into law.  (*See*

6   http://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201920200SB27).

7   This timing exigency has created inordinant pressure and inconvenience for voters

8   harmed by this partisan legislation to retain counsel, mount a defense, and seek

9   injunctive relief.

10  **IX.   PRAYER**

11       WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in

12  his favor and against Defendants, and award the following relief:

13       A.    Pursuant to 28 U.S.C. §§ 2201 and 2202, enter a declaratory judgment

14  declaring that the Trump Ballot Act violates the First and Fourteenth

15  Amendments of the United States Constitution, both on its face and as applied

16  to Plaintiff, as well as the Presidential Elections Clause and the Presidential

17  Qualifications Clause of article II, section 1 of the United States Constitution;

18       B.    Preliminarily and permanently enjoin Defendants, their officers, agents,

19  servants, employees, and attorneys, and those persons in active concert or

20  participation with theim who receive actual notice of the injunction, from

21  enforcing the Trump Ballot Act;

22       C.    Award Plaintiff the reasonable attorneys' fees, costs, and expenses of

23  this action in accordance with 42 U.S.C. § 1988 and any other applicable

24  authority; and

25       D.    Grant Plaintiff such other relief as this Court may deem just and proper.

26

27

28

DATED:  August 5, 2019

MARK ANCHOR ALBERT & ASSOCIATES

By: _____

Mark Anchor Albert

Attorneys for Plaintiff
JEFFREY S. KOENIG

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF